1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

9

In Re:

10

YBA NINETEEN, LLC,

11

     Debtor.

12

13

KAMRAN BANAYAN,

14

     Appellant,

15

v.

16

NANCY L. WOLF; INDYMAC
VENTURE, LLC,

17

18

     Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 15cv1742-WQH-RBB

Bankruptcy No. 13-00968-LA7
[Bankruptcy Appeal #5]

**ORDER**

19

20

HAYES, Judge:

21

     The matter before the Court is the appeal of the "Order on Trustee's Motion for Order Approving Sale of Real Property Located at 5955 La Jolla Corona Drive San Diego, CA 92037 to Indymac Venture, LLC or Highest Bidder" ("Sale Order"), issued by the Bankruptcy Court on August 3, 2015. (ECF No. 1).

22

23

24

## I.    Background

25

     This is the fifth appeal to this Court in this bankruptcy proceeding. *See In re YBA Nineteen*, S.D. Cal. Case No. 13cv1326-WQH-RBB; *In re YBA Nineteen*, S.D. Cal. Case No. 13cv2239-WQH-RBB; *In re YBA Nineteen, LLC*, LLC, S.D. Cal. Case No. 13cv2426-WQH-

26

27

28

1    RBB; *In re YBA Nineteen, LLC*, S.D. Cal. Case No. 15cv473-WQH-RBB.

2       Appellant, Kamran Banayan, is the sole owner and manager of YBA Nineteen, LLC

3 ("YBA"). YBA owned the real property at issue in this appeal, commonly known as 5955

4 La Jolla Corona Dr., La Jolla, California ("Property"). YBA filed a chapter 11 bankruptcy

5 case on January 31, 2013. (ECF No. 14-1). In its schedules, YBA stated that Appellee

6 IndyMac Venture, LLC ("IndyMac") had a secured claim on the Property of $3,810,518.

7 *Id.* at 8, 12. On October 4, 2013, the Bankruptcy Court issued an Order converting the case

8 to a case under Chapter 7 of the Bankruptcy Code. Appellee, Nancy L. Wolf, was appointed

9 Chapter 7 Trustee.[1]

10       On May 22, 2014, a Stipulation for Settlement of Secured Claim (the "Stipulation")

11 was entered into by IndyMac and Nancy L. Wolf, Trustee (the "Trustee") in her capacity as

12 representative of the bankruptcy estate. (ECF No. 23 at 4). The Stipulation stated:

13       The Trustee and IMV seek by means of this Stipulation to settle all claims and
14       disputes between the bankruptcy estate and IMV, under terms which will
      provide an opportunity for the Trustee to market the Property for sale, which
15       marketing efforts may commence while agreed upon repairs and construction
      are being completed.

16 *Id.* at 9. The Stipulation provided sale terms and procedures that IndyMac and the Trustee

17 agreed to comply with. *Id.* at 15. The stipulation stated

18       13. . . . IMV consents to any court-approved sale by the Trustee to be
      completed free and clear of liens and interests . . . . Any sale conducted by the
19       Trustee shall be subject to overbid subject to the following procedures, among
      others which the Trustee may propose, subject to Court approval:

20

21       13.1 IMV may be (but is not required to be) the stalking horse
      bidder. As the stalking horse bidder, IMV may make an initial
22       credit bid of up to $4,660,000.00.

23       13.2 IMV may enter further credit bids, in accordance with the
      overbid procedures, up to the full amount of IMV's Allowed
24       Secured Claim pursuant to paragraph 2.4 of this Stipulation.

25       13.3 All overbids shall be in increments of $100,000.00, and
      (other than IMV's credit bids) shall be in cash and on substantially
26       the same terms as any purchase and sale agreement entered into

27            [1] On February 4, 2014, this Court issued an Order affirming the Bankruptcy Court's
28 Order Converting Case. *In re YBA Nineteen, LLC*, LLC, S.D. Cal. Case No. 13cv2426-
WQH-RBB (ECF No. 32).

          13cv2426-WQH-RBB

1    with the stalking horse bidder.

2    *Id.* at 15-16.

3    On May 22, 2014, YBA filed a "Notice of Non-Opposition to Motion to Approve

4    Stipulation for Settlement of Secured Claim of IndyMac Venture, LLC, Consent to In Rem

5    Relief From Stay and Waiver of Right to Appeal from Order."  (ECF No. 23 at 30).  The

6    Notice of Non-Opposition stated, "YBA Nineteen, LLC, inclusive of its manager Kamran

7    Banayan and any of his affiliates ("YBA") hereby provides notice of its non-opposition to

8    the Motion to Approve the Stipulation (between IndyMac Venture, LLC and the trustee) for

9    Settlement of Secured Claim of IndyMac Venture, LLC."  *Id.* at 31.

10   On May 22, 2014, the Bankruptcy Court issued an Order approving the Stipulation.

11   (ECF No. 23 at 37).

12   On December 18, 2014, the Trustee filed a "Motion for Order Approving Sale of

13   Property Located at 5955 La Jolla Corona Drive, San Diego, CA 92037."  (ECF No. 14-11

14   at 2).  The Trustee explained that with the permission of the Bankruptcy Court, the Trustee

15   marketed and listed the property for sale.  *Id.* at 4.  "The Property was initially offered at a

16   listing price of $5,500,000.  After exposure to the market the listing price was reduced to

17   $4,900,000.00.  However, there have been no offers or expressions of interest at near that

18   price. . . . The Trustee has now entered into a purchase agreement to sell the Property to Mr.

19   George Khouli for $4,100,000.00."  *Id.*

20   On January 20, 2015, the Trustee filed an "Amended Motion for Order Approving

21   Sale."  (ECF No. 14-21 at 2).  The amended motion stated that "on January 9, 2015, shortly

22   before the January 15 hearing on the motion to approve the sale, the Trustee's broker (as well

23   as the broker for Mr. Khouli and the prospective overbidder Atlast Investment Services,

24   received a copy of a document entitled 'Memorandum of Known Defects For Disclosures

25   for Potential Buyers. . . .' signed by Mr. Banayan . . . ."[2]   *Id.* at 6.  The memorandum

26   disclosed many defects of the property and discussed a pending action in superior court,

27   ──────────────

28   [2] The Memorandum of Known Defects is filed in the Appellant's Record on Appeal
     at ECF No. 14-26.

stating, "In the event that Banayan prevails in the pending case, Banayan will seek damages to the full extent of the law against the property and its future owners." (ECF No. 14-26 at 3). As a result of the disclosures by Mr. Banayan, "Mr. Khouli refused to proceed with the sale at the original purchase price. A $200,000 price reduction was negotiated . . . ." (ECF No. 14-21 at 7). The amended purchase agreement reduced the price of the Property to $3,900,000. *Id.* at 8.

On February 12, 2015, the Bankruptcy Court issued a tentative ruling before a sale hearing, granting "Trustee's Amended Motion to Sell Real Property." (ECF No. 16-11). The Bankruptcy Court stated, "This Court has already approved the sales procedure which included a fully disclosed carve-out agreement as part of its approval of the compromise resolving pending litigation between Indymac and the estate." *Id.* at 2. On the same day, the Bankruptcy Court affirmed its tentative ruling and stated that "George Khouli is the buyer for $3,900,000." (ECF No. 16-12 at 2).

On February 18, 2015, the Bankruptcy Court entered an order granting the Trustee's amended motion to sell real property. (ECF No. 16-14). However, George Khouli could not obtain title insurance for the Property and the sale did not proceed.

On May 28, 2015, the Trustee filed the "Motion to Sell Real Property Located at 5955 La Jolla Corona Drive, San Diego, CA 92037 to IndyMac Venture, LLC or Highest Bidder." On June 25, 2015, the Bankruptcy Court issued a tentative ruling before a sale hearing, granting in part and denying in part "Trustee's Motion to Sell Real Property to Indymac Venture, LLC or Highest Bidder." (ECF No. 18-6). The Bankruptcy Court stated:

Court recognizes there have been substantial changes w/r/t this case since the Court initially approved a sale free and clear by order entered 2/18/15 (ECF #253). They are:

1. The discovery of additional impediments to delivering clear title to the buyer. No title insurance was able to be obtained and the buyer refused to proceed without title insurance.

2. The Superior Court expunged both lis pendens and Banayan has exhausted his appellate remedies w/r/t that decision.

3. The state Court of Appeal has reversed the grant of summary judgment in part, restoring Banayan's cause of action for wrongful

foreclosure but affirming the dismissal with prejudice of the cause of action to quiet title.

Further, Court recognizes that in view of the trustee's statements in her Declaration (para. 7 and 8, p. 4:10-15, ECF #270-2), this sale is highly unlikely to attract any overbidders even at a price of $3.7M which is less than what has been noticed in this motion. Consequently, the Trustee agrees with Banayan that the overbidding on a sale without title insurance for $3.9M is illusory. Had Court been presented with these overbid procedures before this sale (as the Trustee should have done), Court likely would not have approved them. Court disapproves them now. This overbid component of the motion is DENIED.

However, Court also recognizes that the terms of a previously noticed and unopposed Stipulation (Para. 13, ECF #194, 204) bind the trustee to present a sale on overbid procedures. She has done so. The stipulation also requires the trustee to notice a sale to IMV (aka Indymac) (*Id.*, Para. 14) and to use her best efforts to obtain Court approval. She has done so. The failure of the Trustee to have done the foregoing would have exposed her and the Estate to a claim for breach of the Stipulation or an ongoing claim of specific performance. (*Id.*, para 23.5).

The foregoing does not compel the Court to approve this sale. However, after careful review of the requirements of Sec. 363(b) and (f) as applied to this sale, the Court finds and concludes the Motion to Sell should be GRANTED.

The Court finds that the sale is proper under Section 363(b) as a proper exercise of the trustee's business judgment. While it does not bring additional revenue into the estate (*See* Stip. Para 12), it does insulate the estate from claims of breach of contract and/or specific performance under the Stipulation which claims would deplete an estate that is already administratively insolvent.

The Court finds the sale is proper under Section 363(f). . . . In the tentative ruling for the 2/12/15 hearing (ECF No. 249), the Court previously approved exactly the same request, although with respect to a third party buyer. . . . The relief in this order will be the same as accorded in the prior sale order (ECF #253, para. G and H).

In his Opposition, Banayan alleges that the reversal of the summary judgment grant by the Court of Appeal somehow restores his contingent claims that may affect title to the property. However, this Court's reading of the Court of Appeal reversal is that it restores the wrongful foreclosure claim but not the quiet title action. California law is clear that a wrongful foreclosure claim is a tort for which the remedy is damages. It doesn't restore title to the property. *See Barragan v. Deutsche Bank*, 2015 WL 3617104 at *5 (C.D., CA, June 9, 2015). . . .

[T]his Court is not adjudicating the underlying merits of Banayan's state court claims; they remain to be litigated in that action. However, they will not be enforceable against the property.

The Court makes the finding that the sale to IMV is to a good faith purchaser within the meaning of Section 363(m). Banayan's argument mostly focuses on the illusory overbidding procedures as evidence of bad faith by IMV. The Court has not approved them. However, the Trustee was required to present them under the terms of the <u>unopposed</u> Stipulation that was noticed to all

creditors.  The purchase price for this sale is the same price as the prior failed sale and this sale does not require title insurance.  IMV is going to take that risk.  Court cannot find any fraudulent conduct, collusion or bad faith under these facts.

(ECF No. 18-6 at 2-4).  At the sale hearing on the same day, the Bankruptcy Judge stated

The Court agrees with Ms. Wolf, who basically agrees with Mr. Banayan, that the overbid procedures are probably not likely to attract overbidders . . . the overbid component of the motion is denied. . . . But the Court has indicated, with respect to the sale itself, that the Court was going to grant the motion to sell.  Now, back to the stipulation itself.  The stipulation itself reserved to IndyMac the right to serve . . . as a stalking-horse bidder . . . .  Mr. Keehn belabors the fact that there is no net benefit to creditors.  There is a stipulation that binds the trustee.  The stipulation was for $200,000 carve-out that would have benefitted creditors of the estate had it not been for the incredible amount of litigation that ensued after the Court approved the last sale of this property, which Mr. Banayan clearly interfered with with his January 8, 2015 letter to everyone in the world, claiming there were all sorts of defects with the property.

The stipulation . . . that the Court is approving the sale under was noticed to all creditors, and Mr. Banayan himself did not oppose it.  It was an unopposed stipulation.  The purchase price which the Court is selling this property to IndyMac is for the same price as the prior failed sale.  It is a sale without title insurance. . . . But these are the same terms under which the original sale . . . was approved and should have been completed.  There is no evidence in this record of fraudulent conveyance on IndyMac's part.  There is no evidence in this record of collusion on IndyMac's part.  There is no evidence that the Court finds that constitutes bad faith under these facts. . . . by citing to the stipulation and claiming that's the bad faith – if that were the bad faith, your client should have been heard at the time this stipulation was presented to the Court.  Your client was silent.

(ECF No. 21 at 25).  On June 25, 2015, the Bankruptcy Court affirmed its tentative ruling. (ECF No. 18-7 at 2).

On August 3, 2015, the Bankruptcy Court entered the Order granting the Trustee's Motion for an Order Approving the Sale of Real Property Located at 5955 La Jolla Corona Drive, San Diego, California, 92037 to IndyMac Venture, LLC or Highest Bidder. (ECF No. 18-9).  The Order finds that IndyMac is a good faith purchaser, entitled to the protections of 11 U.S.C. § 363(m).  The Bankruptcy Court ordered that

The Sale shall be free and clear of any lien or interest claimed by Kamran Banayan and his Affiliates, successors, assigns, and all those claiming under or through him.  This Order is and shall be effective as a determination that, upon and subject to the occurrence of the closing of the sale, all interests referred to in this paragraph have been and hereby are adjudged and declared to be unconditionally released as to the Property.

*Id.* at 3.   The Order incorporated the findings of fact and conclusions of law in the Bankruptcy Court's tentative ruling.  *Id.*  Federal Rule of Bankruptcy Procedure 6004(h) provided for an automatic stay of this order through August 17, 2015.

On August 5, 2015, Banayan filed a Notice of Appeal in this Court of the of the order approving the sale issued by the Bankruptcy Court.  (ECF No. 1).

On August 10, 2015, Banayan filed an Emergency Motion for Stay Pending Appeal in the Bankruptcy Court.  On August 14, 2015, the Bankruptcy Court issued an order denying the motion for stay pending appeal.  (ECF No. 4 at 19).

On August 17, 2015, Banayan filed the "Ex Parte Motion for Stay Pending Appeal *Nunc Pro Tunc* as of August 17, 2015" in this Court.  (ECF No. 3).  On August 17, 2015, Appellee IndyMac Venture, LLC ("IndyMac") filed an opposition to the motion for a stay. (ECF No. 4).  On August 18, 2015, the record shows that the sale transaction of the property was closed and the deed for the property was delivered to IndyMac and recorded.  *See* ECF No. 8.  On August 18, 2015, IndyMac filed a supplemental opposition to the motion for a stay.  (ECF No. 5).  On August 19, 2015, Banayan filed a reply.  (ECF No. 7).

On August 20, 2015, IndyMac filed a supplemental declaration of Lewis R. Landau, counsel for IndyMac, in response to Banayan's reply concerning the regularity of the closing sale transaction.  (ECF No. 8).  The declaration states that

the purchase agreement for the sale transaction approved by the Bankruptcy Court required that closing occur within one (1) day of the effectiveness of the Bankruptcy Court's sale order.  The order became effective on August 18, 2015, and closing was therefore immediately required. . . .

Once the sale order became effective, on August 18, 2015, I personally drove to meet Trustee's counsel, Dean Kirby, in San Diego at 7 a.m. on August 18, 2015.  I personally delivered my client's $50,000 check . . . .

Immediately after delivering the $50,000 check, Mr. Kirby delivered the original Quitclaim Deed by handing it to me.

I then drove to the San Diego County Recorder's office and personally tendered the Quitclaim Deed for recordation.

In further reliance on the closed sale transaction, my client has cancelled the non-judicial foreclosure sale previously scheduled for September 3, 2015 and taken possession of the property from the Trustee.

I believe that the foregoing was in full compliance with an effective order of the Bankruptcy Court and requirements of the sale transaction.

(ECF No. 8 ¶¶ 3, 5-7, 10-11).

On September 15, 2015, the case was reassigned from Judge Alan Burns to Judge William Q. Hayes.  (ECF No. 9).

On September 15, 2015, IndyMac filed a supplemental declaration of Jeanie Caldwell regarding the property status.  (ECF No. 10).  The declaration asserts that IndyMac intends to repair a leaking roof on the property.  The declaration asserts that "it is critical that Indymac Ventures maintain possession of the Property in order to complete required repairs and maintenance and prevent further water intrusion into the Property." *Id.* at 3.

On September 18, 2015, the Court issued an Order requesting the Record of Appeal and setting the briefing schedule.  (ECF No. 12).  The record on appeal was filed by both parties.  (ECF Nos. 14-18, 20-21, 23, 26).  On October 19, 2015, Banayan filed the Appellant Brief.  (ECF No. 22).  On November 2, 2015, IndyMac filed the Appellee Brief.  (ECF No. 24).  On November 2, 2015, Nancy L. Wolf, Trustee, filed a notice of joinder to the Appellee's Brief.  (ECF No. 25).  On November 9, 2015, Banayan filed Appellant's Reply Brief.  (ECF No. 28).

On November 25, 2015 and January 15, 2016, Banayan filed requests for judicial notice.  (ECF Nos. 29, 31, 32).

On January 12, 2016, the Court issued an Order denying Banayan's ex parte motion for a stay pending appeal.  (ECF No. 30).

On January 27, 2016, the Court conducted oral argument.

## II.    Contentions of the Parties

Banayan contends that the Bankruptcy Court failed to apply the correct standard in determining whether IndyMac was a good faith purchaser.  Banayan asserts that a lack of good faith is shown in this case by an attempt to take grossly unfair advantage of other bidders.  Banayan contends that IndyMac demonstrated a lack of good faith by structuring the sale to prevent overbids.  Banayan contends that IndyMac should not be entitled to the

statutory protections of section 363(m) of the Bankruptcy Code, which immunize a good faith buyer from any appeals of a sale order after the sale is consummated. Banayan contends that IndyMac pursued a court-approved sale free and clear of any lien or interests of Banayan in Bankruptcy Court rather than proceeding with a non-judicial foreclosure sale in order to insulate itself from California's anti-deficiency statute.

IndyMac contends that "the sale process was established pursuant to Court approved procedures that YBA and Banayan did not oppose or appeal. . . . The Trustee and IndyMac followed the Court approved procedures in the Stipulation and never 'attempted' to gain an unfair advantage." (ECF No. 24 at 4). IndyMac contends that its status as a good faith purchaser entitles it to the statutory protections of section 363(m), which moots Banayan's appeal of the sale order.

Banayan further contends that after reversing the good faith purchaser status of IndyMac, the Court should entertain Banayan's additional arguments on appeal regarding whether the Bankruptcy Court erred by approving the sale of the Property. Banayan contends that the Bankruptcy Court erred in approving a sale that did not generate sufficient funds to provide meaningful distribution to unsecured creditors and that allowed IndyMac to use Federal Bankruptcy jurisdiction to circumvent anti-deficiency laws. Banayan contends that the Bankruptcy Court lacked constitutional authority to enter a final order cutting off Banayan's common law claims.

II.   **Discussion**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). *See In re Rosson*, 545 F.3d 764, 770 (9th Cir. 2008). On appeal, the bankruptcy court's interpretations of law are reviewed de novo and its factual findings are reviewed for clear error. *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009).

Sales under 11 U.S.C. § 363 are reviewed for abuse of discretion. *In re Fitzgerald*, 428 B.R. 872, 880 (9th Cir. BAP 2010). "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *In re Popp*, 323 B.R. 260, 265 (9th Cir. BAP 2005) (citations and internal quotations omitted).

"The reversal of an order for abuse of discretion requires a definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon weighing the relevant factors." *Id.* (citations and internal quotations omitted).

While a bankruptcy judge is not likely to approve a sale that does not appear to be in "good faith," "a finding of 'good faith' is not an essential element for approval of a sale under section 363(b), such a determination becomes important with respect to potential mootness when an appeal is taken from the order authorizing the sale." *In re Fitzgerald*, 428 B.R. 872, 880 (9th Cir. BAP 2010); *In re Thomas*, 287 B.R. 782, 785 (9th Cir. BAP 2002). The statutory mootness provision in Bankruptcy Code § 363(m) states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

"Even though an appeal from an order approving a sale is moot if the sale has not been stayed and is consummated, there are several exceptions. One exception to the mootness rule is for appeals questioning whether the purchaser purchased the property in good faith." *In re Fitzgerald*, 428 B.R. at 880. "Bankruptcy's mootness rule operates only when the purchaser bought an asset in good faith." *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1173 (9th Cir. 1988). "Unless and until 'good faith' has been determined, the appeal is not moot under section 363(m)." *In re Fitzgerald*, 428 B.R. at 881 (citing *In re Thomas*, 287 B.R. at 785). "[W]ithout a proper 'good faith' finding under section 363(m), there is no safe harbor to shield the Sale Order from appellate review and appellate remedies." *Id.*

"'Good faith' is a factual determination to be reviewed for clear error and can be defeated by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Thomas*, 287 B.R. at 285 (citations and internal quotations omitted). "The Bankruptcy Code does not provide a definition of good faith . . . . we have held that in the context of foreclosure sales that to

1  determine good faith we look to the integrity of the actor's conduct during the proceedings.
2  *In re Adams Apple, Inc.*, 829 F.2d 1484, 1489 (9th Cir. 1987).  "Misconduct defeating good
3  faith includes fraud, collusion, or an attempt to take grossly unfair advantage of others.  A
4  creditor fails to act in good faith if it acts for an improper purpose."  *Id.* (citations and
5  internal quotations omitted).

6      In this case, the Bankruptcy Court expressly found that IndyMac was a good faith
7  purchaser within the meaning of 11 U.S.C. § 363(m).  The Bankruptcy Court stated, "The
8  Court makes the finding that the sale to IMV is to a good faith purchaser within the meaning
9  of Section 363(m). . . . Court cannot find any fraudulent conduct, collusion, or bad faith
10 under these facts."  (ECF No. 18-6 at 3-4).  The Bankruptcy Court's finding of good faith
11 is reviewed for clear error.  *See In re Thomas*, 287 B.R. at 285.

12     Prior to the sale at issue in this case, the sale procedures were agreed on by the Trustee
13 and IndyMac in the Stipulation that the Bankruptcy Court approved on May 22, 2014.
14 Banayan and YBA filed a notice of non-opposition to the Stipulation.  The Stipulation
15 created the method under which the Trustee could sell the Property.  Though Banayan now
16 objects to the sale procedures set forth in the Stipulation, the Bankruptcy Court correctly
17 noted that to the extent Banayan objects to the terms of the Stipulation, his objections were
18 not timely.  *See* ECF No. 21 at 25 ("by citing to the stipulation and claiming that's the bad
19 faith – if that were the bad faith your client should have been heard at the time this
20 stipulation was presented to the Court.  Your client was silent.").  Pursuant to the Stipulation,
21 the Trustee marketed the Property and received an offer to purchase the Property from a third
22 party, George Khouli, for $3,900,000.  The Bankruptcy Court entered an order approving
23 this arms length sale for a price determined by the market.  After George Khouli refused to
24 proceed according to the sale agreement because he could not obtain title insurance for the
25 Property, IndyMac agreed to purchase the Property for $3,900,000, the same amount as the
26 previous sale, without title insurance.

27     Banayan contends that IndyMac lacked good faith because it chose to acquire the
28 Property through a court-approved sale pursuant to the procedures set forth in the Stipulation

instead of a non-judicial foreclosure.  Prior to entering the Stipulation, IndyMac had the right to foreclose on the Property and noticed a non-judicial foreclosure sale.  The Trustee and IndyMac entered into the Stipulation, not opposed by Banayan, in order to give the bankruptcy estate the opportunity to market and sell the property for a price that reflected the true value of property before IndyMac conducted a non-judicial foreclosure sale.  The Stipulation provided, "IMV May Require Sale.  IMV shall have the right to require that a sale be conducted under the above procedures, and to require (if it so elects) that IMV be the stalking horse bidder . . . ."  (ECF No. 23 at 16).  The Stipulation gave IndyMac the right to purchase the Property through a court-approved sale.  Through the marketing and sale efforts, the parties were not able to obtain a third party buyer for the Property.  After the first sale agreement to George Khouli was not completed, the sale to IndyMac was conducted pursuant to the sale procedures set forth in the Stipulation.  IndyMac's compliance with the unopposed Stipulation supports the finding by the Bankruptcy Court that IndyMac acted in good faith.

Banayan further contends that IndyMac was not a good faith purchaser because IndyMac attempted to take advantage of other bidders by proposing overbid procedures that would not attract overbidders.  In the sale to IndyMac, the parties agreed to sell the property under the terms of the prior sale the Bankruptcy Court approved in the February 18, 2015 order approving sale of the Property to George Khouli.  The overbid procedures proposed in both sales were the procedures set forth in the unopposed Stipulation.  The Stipulation provided that,

> IMV consents to any court-approved sale by the Trustee . . . . Any sale conducted by the Trustee shall be subject to overbid subject to the following procedures . . . subject to Court approval:
>
> > 13.1  IMV may be . . . the stalking horse bidder.  As the stalking horse bidder IMV may make an initial credit bid of up to $4,660,000.00. . . .
> >
> > 13.3  All overbids shall be in increments of $100,000.00, and . . . shall be in cash and on substantially the same terms as any purchase and sale agreement entered into with the stalking horse bidder.

*Id.* at 15-16.  With regard to the sale to IndyMac, the Bankruptcy Court found that based on the Trustee's marketing efforts and the prior attempted sale, "this sale is highly unlikely to attract any overbidders even at a price of $3.7M. . . . [T]he overbidding on a sale without title insurance for $3.9M is illusory."  (ECF No. 18-6 at 2-4); *see also* (ECF No. 21 at 25) ("The Court agrees with Ms. Wolf, who basically agrees with Mr. Banayan, that the overbid procedures are probably not likely to attract overbidders.").  The Bankruptcy Court did not approve the overbid procedures proposed pursuant to the Stipulation.  The Bankruptcy Court stated,

> Banayan's argument mostly focuses on the illusory bidding procedures as evidence of bad faith by IMV.  The Court has not approved them.  However, the Trustee was required to present them under the terms of the unopposed Stipulation that was noticed to creditors.  The purchase price for this sale is the same price as the prior sale and this sale does not require title insurance.  IMV is going to take that risk.  Court cannot find any fraudulent conduct, collusion or bad faith under these facts.

(ECF No. 18-6 at 2-4).  The record supports the finding by the Bankruptcy Court that IndyMac did not attempt to "take grossly unfair advantage of other bidders" or engage in fraud or collusion during the purchase process.  *See In re Thomas*, 287 B.R. at 285.

The Court concludes that the Bankruptcy Court applied the correct standard to determine whether IndyMac was a good faith purchaser and that the Bankruptcy Court based its good faith determination on the evidence in the record.  The Court has reviewed the record and concludes that the Bankruptcy Court did not commit clear error in determining that IndyMac was a good faith purchaser under section 363(m).

Because the sale has occurred and the Court affirms the Bankruptcy Court's determination that IndyMac was a good faith purchaser under section 363(m), the additional issues Banayan raises on appeal are moot.  *See In re Ewell*, 958 F.2d 276, 282 (9th Cir. 1992) ("Because the Buyer was a good faith purchaser, under 11 U.S.C. § 363(m) the sale may not be modified or set aside on appeal unless the sale was stayed pending appeal.  It was not, and the court thus cannot grant any effective relief).  The finding by the Bankruptcy Court that

1   IndyMac was a good faith purchaser is affirmed and the appeal is otherwise moot.[3]

2   **III.   Conclusion**

3         IT IS HEREBY ORDERED that the finding by the Bankruptcy Court that IndyMac

4   was a good faith purchaser is affirmed and the appeal is dismissed.  The Clerk of the Court

5   shall enter judgment in favor of Appellees and against Appellant.

6   DATED:  February 11, 2016

7                                       *William Q. Hayes*

8                                       **WILLIAM Q. HAYES**
                                        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   ─────────────────

28         [3]  Banayan made multiple requests for judicial notice.  (ECF Nos. 29, 31, 32).  The
      Court did not rely on these documents to reach its decision.